# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 19, 2007 Session

## CRYSTAL LASHEA CALDWELL v. JOSHUA RANDALL HILL

**Appeal from the Juvenile Court for Cocke County**
**No. CU-03185     John A. Bell, Judge**

**Filed June 27, 2007**

**No. E2007-00082-COA-R3-JV**

Father and Mother entered into an agreed permanent parenting plan following their separation in 2004. In 2005, Father requested a modification of the plan to increase his co-parenting time with the parties' daughter. The petition to modify was filed shortly after the trial court increased his child support from $30 per week to more than $100 per week, and also less than a week after his marriage to his longtime girlfriend. The trial court found that Father's marriage and the fact that he had quit smoking marijuana were both material changes of circumstance, and that Father should receive equal parenting time with the child. Mother appeals. After careful review, we find that there has been no material change of circumstance justifying reconsideration of the parties' parenting arrangement. Accordingly, we reverse the trial court's modification of the parenting plan and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed; Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Thomas V. Testerman, Newport, Tennessee, for the Appellant, Crystal LaShea Caldwell.

Brad L. Davidson, Newport, Tennessee, for the Appellee, Joshua Randall Hill.

## OPINION

### *I. Background*

This dispute stems from the modification of a parenting arrangement. Crystal LaShea Caldwell ("Mother") and Joshua[1] Randall Hill ("Father") are the parents of one child, Brandi Nicole Hill, born October 13, 2000. Mother was 17 years old and a high school junior when she became pregnant with the child. Father was 22 or 23 years old at the time.[2] A few weeks after Mother attained majority, she and Brandi moved in with Father. Approximately three years later, the couple separated. The parties submitted an agreed Permanent Parenting Plan to the trial court, which was approved on April 7, 2004. The plan provided that Mother was the primary residential parent of the child, with Father having parenting time with the child every other weekend and one night per week. The parties also agreed that Father would pay $30 per week in child support to Mother.

The following year, Mother petitioned the trial court for modification of Father's child support obligation. On September 20, 2005, the trial court entered an order increasing Father's child support payment to $106 per week upon finding that Father was earning substantially more money than he did at the time the initial parenting plan was entered.[3] Three days later, Father married his longtime girlfriend, Benita Raleigh.

Shortly thereafter, on October 11, 2005, Father filed a Motion for Modification of Parenting Plan and a proposed Parenting Plan, requesting that he and Mother have equal parenting time on an alternating week schedule. The proposed plan also provided that Father would pay $141 per month (approximately $35 per week) in child support – an amount that was not much more than the original child support payments of $30 a week set forth in the 2004 Permanent Parenting Plan. Mother filed a motion to dismiss Father's petition, and Father then filed a "Further Motion for Modification of Parenting Plan," which asserted the following as a material change in circumstances:

> A substantial and material change in circumstances has occurred in that the Defendant Joshiauh Randall Hill was wed to the former Benita Raleigh on September 23, 2005. Before marriage Mr. Hill had Benita Raleigh stay elsewhere while he exercised co-parenting time. However, this is no longer necessary.

A trial was conducted on May 22, 2006, and the trial court entered an order on June 27, 2006, granting Father equal co-parenting time on an alternating week basis until entry of a new parenting plan. The trial court invited the parties to negotiate a parenting plan that reflected the new co-

---

[1]In parts of the record, Father's first name is also spelled "Joshiauh."

[2]Mother and Father never married.

[3]In its order, the trial court also required Father to undergo hair follicle testing to detect the presence of marijuana, which Mother had requested in a previous petition.

parenting arrangement, and if such negotiations were unsuccessful, each party was directed to file his or her own proposed parenting plan with the trial court. The trial court entered a Permanent Parenting Plan Order on December 21, 2006, which established a co-parenting schedule identical to that in the June 27, 2006, order and set Father's child support obligation at $141 per month.[4] Mother appeals.

## *II. Issue Presented*

The issue presented is whether the trial court erred in modifying the existing Permanent Parenting Plan to provide for 50/50 co-parenting time between the parties.

## *III. Standard of Review*

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co., Inc.,* 984 S.W.2d 912, 915 (Tenn. 1999). The trial court's conclusions of law are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

The paramount concern in a child custody case is the welfare of the child. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). The Supreme Court has noted that "the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge." *Id.* at 85 (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). Appellate courts will not interfere with a trial court's custody decision unless it is shown that the trial court exercised its discretion in an erroneous manner. *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993); *Mimms v. Mimms*, 780 S.W.2d 739, 744-45 (Tenn. Ct. App. 1989).

Under the abuse of discretion standard, we must uphold the trial court's ruling as long as reasonable minds could disagree about its correctness. *DeLong v. Vanderbilt University*, 186 S.W.3d 506, 511 (Tenn. Ct. App. 2005). According to the Tennessee Supreme Court, "A trial court abuses its discretion only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001) (internal quotations omitted). Applying this standard, we are not permitted to substitute our judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

---

[4]The plan also ordered Father to pay $179 in medical expenses for Brandi that he had previously refused to pay. This amount is not at issue on appeal.

*IV. Analysis*

As the Supreme Court has noted on several occasions, trial courts are vested with wide discretion in matters of child custody. *Eldridge v. Eldridge,* 42 S.W.3d at 85; *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). A determination of custody and visitation often hinges on subtle factors such as the parents' demeanor and credibility during the trial proceedings. *Gaskill v. Gaskill,* 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). Absent some compelling reason otherwise, considerable weight must be given to the trial court's judgment with respect to the parties' credibility and their suitability as custodians of children. *Bush v. Bush,* 684 S.W.2d 89, 94-95 (Tenn. Ct. App. 1984). In cases such as this, the welfare and best interests of the child are of paramount concern. Tenn. Code Ann. § 36-6-106(a); *Koch v. Koch*, 874 S.W.2d at 575.

Tennessee Code Ann. § 36-6-601 provides as follows regarding requests for a change of custody:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(B). Thus, the threshold inquiry for a trial court faced with a petition to modify the parties' parenting arrangement is whether a material change in circumstance has occurred. *See, e.g.*, *Cowan v. Hatmaker*, No. E2005-01433-COA-R3-CV, 2006 WL 521492, at *4 (Tenn. Ct. App. E.S., filed March 3, 2006); *Mulkey v. Mulkey*, No. E2004-00590-COA-R3-CV, 2004 WL 2412610, at *5 (Tenn. Ct. App. E.S., filed Oct. 28, 2004)*; Harris v. Harris*, 832 S.W.2d 352, 353 (Tenn. Ct. App. 1992); *Woodard v. Woodard*, 783 S.W.2d 188, 189 (Tenn. Ct. App. 1989). The burden of proof is on the petitioner to establish such a change. Tenn. Code Ann. § 36-6-101(a)(2)(B). We have previously stated that to constitute a material change of circumstance as contemplated by the statute, "the change must occur after the entry of the order sought to be modified and the change cannot be one that was known or reasonably anticipated when the order was entered." *Cowan*, 2006 WL 521492, at *4. Furthermore, the change must materially affect the child's well-being. *Id.*

In its order, the trial court found two material changes of circumstance since the entry of the initial Permanent Parenting Plan, stating as follows:

> The Court finds the father had personal issues in the past that prevented him from having equal co-parenting time with the minor

child. These personal issues of the father have been resolved by him and constitute a substantial and material changes [sic] of circumstances.

a. The father no longer uses marijuana.

b. The father has married Benita Raleigh on September 23, 2005. Prior to the marriage the father and Benita Raleigh lived together without the benefit of marriage. Benita Raleigh stayed elsewhere while the father exercised limited co-parenting time with the child.

The Court finds the father and the mother are now equally able to care for the needs of the minor child and both should be awarded equal co-parenting time with the minor child. As a result of the substantial and material change of circumstances, there is now no justification for deviation from a presumption of equal co-parenting time.

Father testified at trial that his marriage to Ms. Raleigh was not foreseeable at the time the initial parenting plan was entered in 2004 and therefore, should be considered a material change of circumstance. We disagree. Father was living with Ms. Raleigh when he and Mother negotiated the terms of the 2004 parenting plan. While Ms. Raleigh was unable to stay at Father's house when he had visitation with the children,[5] she was nevertheless an important part of Father's life, as evidenced by his decision to cohabitate with her. Thus, it was foreseeable that Father might marry Ms. Raleigh before Brandi reached the age of majority. Furthermore, we have often held that remarriage is foreseeable after the separation of two parents, stating, "Remarriage, by itself, is not the sort of change in circumstances that triggers a re-examination of an existing custody arrangement because remarriage is such a common occurrence in contemporary society that it can reasonably be anticipated when parties divorce." *McEvoy v. Brewer*, No. M2001-02054-COA-R3-CV, 2003 WL 22794521, at \*4 (Tenn. Ct. App. M.S., filed Nov. 25, 2003); *see also Smithson v. Easterly*, No. 01A01-9806-CV-00314, 1999 WL 548586, at \*5 (Tenn. Ct. App. M.S., filed July 29, 1999) (citing statistics indicating that "an estimated seventy-five percent of divorced persons marry again"). Therefore, even if Father was not involved in a relationship with Ms. Raleigh or anyone else at the time of the 2004 plan, we still would have held that it was foreseeable that he might marry at some time in the future.

We should point out that while remarriage itself is not sufficient to show a material change of circumstance, "the possible change in home environment caused by such remarriage is a factor to be considered in determining whether or not there has been a material change in circumstance that would warrant an alteration of custody arrangements." *Tortorich v. Erickson*, 675 S.W.2d 190, 192

---

[5]The 2004 parenting plan required that neither parent entertain unrelated overnight guests during visitation with Brandi.

(Tenn. Ct. App. 1984). However, Father has submitted very little evidence of the effect of his marriage to Ms. Raleigh, and Ms. Raleigh did not testify as to her willingness or ability to have Brandi in the home. The only information presented during the hearing regarding Ms. Raleigh was that she and Father had smoked marijuana together and that she had been cited for contempt because she used profanity in court at some time in her past. As we have stated previously, "The character, attitude and general personality of other persons who would be in a position to influence the children are important considerations for the court." **Riddick v. Riddick**, 497 S.W.2d 740, 742 (Tenn. Ct. App. 1973), *overruled in part on other grounds*, 676 S.W.2d 554 (Tenn. 1984). Based on the record before us, Father's marriage to Ms. Raleigh was not a material change of circumstance sufficient to trigger a re-evaluation of the parties' parenting arrangement, and the trial court erred by holding otherwise.

The trial court also found that Father had quit smoking marijuana and concluded that this was a material change of circumstance. Father testified that the last time he smoked marijuana was before a court-ordered drug test which he failed in early 2005.[6] Although we are skeptical of this statement, given Father's admission that he lied under oath about his marijuana use during a previous court hearing, we do not believe that the evidence preponderates against the trial court's finding that Father has quit smoking marijuana. However, we are not convinced that Father's new marijuana-free lifestyle constitutes a material change of circumstance.

There is no evidence in the record to indicate that Father's marijuana use was an issue during negotiation of the 2004 parenting plan. At oral argument, counsel for Father admitted the same. Therefore, if Father did not smoke marijuana at the time the initial parenting plan was entered, and he doesn't smoke marijuana now, we fail to see how there has been a material change of circumstance justifying a change of custody. We find this case to be similar to **Scott v. Scott**, 1988 WL 116380 (Tenn. Ct. App., filed Nov. 2, 1988), in which a father sought modification of custody of the parties' children after the mother received treatment for depression and other problems. Testimony established that the trial court ordered joint custody of the Scotts' two children at the time of their divorce. *Id.* at *1. Mrs. Scott subsequently developed a drug addiction from medicine prescribed for health problems, followed by an alcohol problem, and then committed a criminal act as a result. *Id.* at *2. She also attempted suicide. *Id.* However, the trial court noted that Mrs. Scott, at the time of the hearing on Father's request for custody modification, had recovered from these incidents, stating as follows:

> It's evident in this case that she finally decided that she did have
> problems, and any suicide attempt is a very extreme problem. But
> she decided to put her life back together, and she has done a real good
> job of that at this point in time. I find nothing wrong with her, and I

---

[6]Father failed a court-ordered drug test in early 2005. In an order filed March 4, 2005, the trial court revoked Father's overnight visitation with Brandi and required supervision of Father's day visits for two weeks. Father's normal visitation schedule was to resume following satisfactory completion of a second drug test. Although there is not an order setting forth the results of Father's second drug test, Father apparently passed the second test and the original visitation schedule was reinstated.

> commend her for getting it together.
>
> *　　　　*　　　　*
>
> [A]t this particular point I would have to make a finding, after all this evidence put into the record, both of these parties are fit and proper persons at this time to have custody of this child. And as a result of that, I find no change of circumstances at this present time to warrant a change . . . .
>
> The record is clear that there probably was a time prior to the instant hearing when it would have been in Kelly's best interest to change custody. However, the record is also clear that plaintiff was rehabilitated before defendant sought a change in custody.

*Id.* Although in the case at bar, it is the rehabilitated drug user who is seeking a modification in custody, rather than the other parent, we find the trial court's reasoning in **Scott** to be persuasive under the facts with which we are presented. In **Scott**, the mother developed substance abuse problems after the entry of the initial parenting plan, but then rehabilitated herself before the father filed a petition to change custody. The trial court found that there had not been a material change of circumstance and refused to change the parties' custody arrangement. *Id.* at *2-3. Similarly, in the dispute between the parties in this case, Father did not have a drug problem at the time the 2004 Permanent Parenting Plan was entered. He later started using marijuana, but then quit. He now seeks modification of the parenting plan because he has stopped his drug use. However, because Father's drug use was not a factor at the time of the 2004 plan, we cannot find that his marijuana cessation constitutes a material change of circumstance. We further hold that the trial court erred by concluding otherwise.

As a final note, we emphasize that the burden of proof is upon Father, as the petitioner, to show that a material change of circumstance has occurred and that the parenting plan he proposed is in his daughter's best interest. Tenn. Code Ann. § 36-6-101(a)(2)(B). The Tennessee Supreme Court has stated that one of the primary factors to be considered in the material change of circumstance analysis is whether the alleged change has affected the child's well-being in a meaningful way. **Kendrick v. Shoemake**, 90 S.W.3d 566, 570 (Tenn. 2002) (quoting **Blair v. Badenhope**, 77 S.W.3d 137, 150 (Tenn. 2002)). In **Gervais v. Gervais**, a father petitioned for a change of custody based in part on allegations that the Mother had failed to properly administer medicine to the couple's daughter. **Gervais v. Gervais**, No. M2005-01483-COA-R3-CV, 2006 WL 3258228, at *6 (Tenn. Ct. App. M.S., filed Nov. 9, 2006). Affirming the trial court's refusal to modify custody, we stated that:

> [A] material change of circumstances must be one that affects that child's well-being in a meaningful way. Consequently, evidence, or the lack thereof, as to the effect on the child's well-being of the alleged failure to follow medical direction was relevant. Without evidence that the deviation from the instructions for the medicine, for

whatever period of time it occurred, affected the child's well-being,
a material change of circumstances was not proved.

*Id.* While it is true that "a parent's change in circumstances may be a material change in circumstances for the purposes of modifying custody if such a change affects the child's well-being," **Kendrick**, 90 S.W.3d at 570, in the case at bar, Father presented no evidence regarding how his marriage to Ms. Raleigh and his decision to quit smoking marijuana have affected his daughter. Therefore, as in **Gervais**, Father failed to meet his burden of proof to establish that a material change of circumstance occurred, and the trial court should not have moved past this threshold inquiry to consider whether a change in the parenting plan was in the child's best interest. **Long v. Harbin**, No. E2006-00336-COA-R3-JV, 2006 WL 2842896, at *3 (Tenn. Ct. App. E.S., filed Sept. 20, 2006).

We commend Father for making changes in his life that improve his ability to parent his daughter. However, these actions, under the law, do not constitute a change of circumstances which affect the child's well-being in a meaningful way so as to justify a change in the permanent parenting plan.

## V. Conclusion

After careful review, we hold that the trial court erred by modifying the Permanent Parenting Plan to provide for equal co-parenting time because there was no material change of circumstance. We reverse and remand for further proceedings consistent with this opinion. All costs of appeal are taxed against the Appellee, Joshua Randall Hill.

_____
SHARON G. LEE, JUDGE