# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 21, 2011 Session

## ROBERT H. GOODALL, JR. v. WILLIAM B. AKERS

**Appeal from the Circuit Court for Sumner County**
**No. 26169-C     Tom E. Gray, Chancellor**

**No. M2010-01584-COA-R3-CV - Filed March 1, 2011**

Buyer of real property brought suit against seller for intentional misrepresentation, fraudulent misrepresentation, breach of contract, and breach of express warranty. The trial court determined that the buyer's reliance upon the seller's representations was reasonable. On appeal, the seller argues that the evidence does not support the trial court's decision and that the trial court erred in excluding expert testimony offered by the seller. Because we have determined that the trial court erred in excluding the expert testimony in question, we reverse and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., joined. FRANK G. CLEMENT, JR., J., dissenting.

George Edward Barrett and Scott Patton Tift, Nashville, Tennessee, for the appellant, William B. Akers.

Barbara Jones Perutelli, Nashville, Tennessee, for the appellee, Robert H. Goodall, Jr.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND[1]

William B. Akers owned a 716-acre tract of property in Sumner County that included a four-or-five-acre lake. Robert Goodall, a real estate broker and developer, entered into a contract with Akers on November 4, 2003, to purchase the property. On November 8, 2003, Ed Kittrell, a neighbor who helped Akers with the property, told Goodall that the earthen dam built to create the lake had been "condemned" by the Corps of Engineers. Goodall requested and received a property disclosure statement from Akers. On the property disclosure statement, Akers answered "No" to the question, "Have you received notices by governmental or quasi-governmental agency affecting the Property including but not limited to road changes, zoning changes, assessments, etc.?" and to questions regarding earth stability and drainage or flooding problems.

Prior to the closing, Goodall talked to his attorney, Kay Housch, about the information he had learned from Kittrell. Housch contacted Akers's attorney, who reassured Housch and informed her that Akers would put an additional warranty in the contract to address these concerns. In an amendment to the sale contract, Akers added the following warranty: "[T]o Seller's knowledge there have been no problems with the existing dam on the lake on the Property since same was repaired by Seller and since Seller constructed an enlarged spill way years ago."[2] The amendment was dated February 24, 2004.

The closing occurred on March 2, 2004. Goodall thereafter learned of previous communications between Akers and state dam safety officials concerning the condition of the dam.

*Prior history of dam safety issues*

In April 1982, the Division of Water Resources of the Tennessee Department of Conservation notified Akers that he was to file a certificate of approval and safety regarding the dam. This letter referenced an October 1981 safety inspection conducted by the state and the Army Corps of Engineers, a copy of which had been sent to Akers; according to the

---

[1]Our summary of the facts is largely a duplication of the facts set forth in our opinion in the previous appeal in this case. *See Goodall v. Akers*, No. M2008-01608-COA-R3-CV, 2009 WL 528784, at *1 (Tenn. Ct. App. Mar. 3, 2009). The operative facts are not in dispute.

[2]A few years after purchasing the property in the late 1950's, Akers and his brother had the earthen dam built to create the lake. Prior to 1970, the dam washed out and was reconstructed with an enlarged spillway.

letter, the report outlined "a number of significant safety deficiencies" and recommendations for correction.

In July 1985, Akers received a letter from the Division of Water Management of the Tennessee Department of Health & Environment[3] ("TDHE") attaching a recent safety inspection report and stating that, "[b]ased on the deficiencies found during this inspection, a Certificate of Approval and Safety cannot be issued at this time." The dam was classified as "a small dam with a high potential for downstream hazard." Among the problems cited in the letter was the inspector's finding that the "downstream face of the dam is leaking significantly over an area near to the top of the dam." The letter referenced a recent telephone conversation with Akers in which he was told that the lake should be drained as soon as possible. Within 30 days of receiving the letter, Akers was to consult an engineer concerning the condition of the dam. In a reply letter, Akers informed the TDHE that the level of the lake had been lowered about ten feet and that it was his intention to drain the lake and leave it drained. In October 1985, the TDHE notified Akers that, "[d]ue to the hazard category of your dam and to the signs of instability of the structure itself, the dam cannot be certified for operation even in the drained condition." Akers was directed to contact an engineer to assess the dam and propose actions to rehabilitate it. In January 1986, a letter from the TDHE notified Akers that the lake had been classified as a farm pond and that the TDHE therefore did not intend to regulate it.

In August 1996, an inspector from the Safe Dams Section of the Division of Water Supply of the Tennessee Department of Environment and Conservation[4] ("TDEC") performed a farm pond review and sent Akers a report stating that "the dam is not stable" and suggesting that the lake be drained. Among the problematic conditions cited was seepage around the outlet pipe. The inspector informed Akers that if he wanted to keep the lake "he needed to have a licensed engineer evaluate the conditions of the dam and make recommendations" to Akers. A July 2001 inspection report states that the property was unchanged; Akers advised the inspector that the public was still not allowed on the property.

Lawsuit

Goodall filed the instant lawsuit against Akers on November 1, 2004, alleging causes of action for intentional misrepresentation, fraudulent concealment, breach of contract, and

---

[3]It appears that the Department of Health & Environment took over the dam inspection responsibilities previously performed by the Department of Conservation.

[4]The Tennessee Department of Environment and Conservation took over the dam safety responsibilities previously performed by the TDHE.

breach of express warranty. In February 2006, Akers filed a motion for summary judgment. Goodall filed a motion for partial summary judgment as to liability; he submitted an affidavit from his attorney in the real estate transaction, Kay Housch. Both parties relied on the depositions of Akers and Goodall.[5] The trial court denied Akers's motion for summary judgment and granted Goodall's motion for partial summary judgment as to liability. On appeal, this court reversed the grant of summary judgment because there was "a genuine issue of material fact as to whether [Goodall] reasonably relied upon [Akers'] misrepresentations" concerning the condition of the dam. *Goodall*, 2009 WL 528784, at *1.

Back in the trial court, the parties filed a joint stipulation, which included their agreement that the only issue remaining for trial was "the reasonableness of Mr. Goodall's reliance under the circumstances of Mr. Akers's alleged representations." The parties also stipulated to the qualifications of their respective expert witnesses "to testify as experts to matters pertaining to their respective fields."

On April 6, 2010, Goodall filed a motion in limine asking the court to exclude the expert testimony of Jeff Guild and Albert Buckley. Goodall asserted that Akers intended to use these expert witnesses to testify "on the issue of whether Mr. Goodall's reliance in this case was reasonable" and, he argued, "[t]he determination of reasonable reliance is a legal conclusion, not an opinion of fact." At the beginning of the trial on April 9, 2010, the court heard arguments on and granted the plaintiff's motion in limine. The defendant made an offer of proof as to both witnesses.

The plaintiff put on testimony from Kay Housch, the real estate attorney who represented him during the real estate transaction at issue, and Goodall himself testified. The defendant moved for a directed verdict after the plaintiff's proof; the court denied the motion and took the case under advisement. In a memorandum opinion entered on June 10, 2010, the court entered judgment in favor of the plaintiff and detailed its factual findings. The court entered its order on June 22, 2010, stating: "For the reason set forth in the Memorandum, the Court finds that the Plaintiff's reliance on the representations made by the Defendant was reasonable, that the Plaintiff has carried the burden of proof on the elements of intentional misrepresentation and should have a judgment against the Defendant." The court entered judgment in favor of the plaintiff in the amount of $250,000 plus reasonable attorney fees.

---

[5]A summary of these depositions appears in our previous opinion in this case. *See Goodall*, 2009 WL 528784, at *2-4.

On appeal, Akers argues that the trial court erred (1) in holding that it was reasonable for Goodall to rely on Akers's representations concerning the earthen dam and (2) in excluding the testimony of Akers's expert witnesses.

ANALYSIS

We begin with the evidentiary issue. A trial court's decisions regarding the admission or exclusion of evidence are reviewed under an abuse of discretion standard. *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 273 (Tenn. 2005); *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). Under this standard, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). So, "we are not permitted to substitute our judgment for that of the trial court." *Id.*

In its final order, the court included its ruling on the plaintiff's motion in limine:

> Prior to trial the court took oral argument on the Motion in Limine and granted the motion that the expert witnesses could not give an opinion which is a legal conclusion and specifically that the reliance of Mr. Goodall on representation of Mr. Akers was not reasonable. No prohibition was made by the court that the defendant's expert witnesses could not testify; they would not be allowed to give an opinion on the ultimate issue to be decided by the court after determination of fact.

Akers argues on appeal that the court's action in excluding the testimony of his two expert witnesses was erroneous because the court applied an incorrect legal standard in that the reasonableness of Goodall's reliance was a factual issue, not a legal issue.

Tenn. R. Evid. 702 provides: "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify in the form of an opinion or otherwise." Pursuant to Tenn. R. Evid. 704, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." As our Supreme Court has made clear, "expert opinion testimony which embraces an ultimate issue must be 'otherwise admissible' and not objectionable on other grounds." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing Neil P. Cohen, Donald F. Paine & Sarah Y. Sheppeard, TENNESSEE LAW OF EVIDENCE § 704.3 (2d ed. 1990)).

Justifiable reliance is an essential element of a claim for fraudulent misrepresentation or fraudulent concealment. *See McNeil v. Nofal*, 185 S.W.3d 402, 408 (Tenn. Ct. App.

2005). Whether the plaintiff's reliance on a representation was reasonable is a question of fact. *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996); *see generally Smith v. Sloan*, 225 S.W.2d 539, 541 (Tenn. 1949) (determination of reasonable conduct as question of fact). There are a number of factors relevant to the determination of whether a plaintiff's reliance was reasonable:

> (1) the plaintiff's business expertise and sophistication; (2) the existence of a longstanding business or personal relationship between the parties; (3) the availability of the relevant information; (4) the existence of a fiduciary relationship; (5) the concealment of the fraud; (6) the opportunity to discover the fraud; (7) which party initiated the transaction; and (8) the specificity of the misrepresentation.

*Pitz v. Woodruff*, No. M2003-01849-COA-R3-CV, 2004 WL 2951979, at *10 (Tenn. Ct. App. Dec. 17, 2004); *see also Allied Sound, Inc. v. Neely*, 58 S.W.3d 119, 122 (Tenn. Ct. App. 2001).

Since justifiable reliance is a question of fact, the trial court was in error in basing its exclusion of the defendant's expert testimony on the premise that this was a question of law. Moreover, the fact that justifiable reliance is an ultimate issue to be decided is not a basis for exclusion of expert testimony. Tenn. R. Evid. 704. The trial court gave no other reason for its exclusion of the evidence at issue. We must, therefore, conclude that the trial court erred in excluding the expert testimony offered by Akers on the reasonableness of Goodall's reliance on Akers's representations.[6]

In light of our conclusion regarding the evidentiary issue presented, we have determined that the trial court's decision must be reversed and remanded.

---

[6] The dissent is based on three points: that the proposed testimony would not substantially assist the trier of fact, that the experts were not prohibited from testifying as to other relevant matters, and that the exclusion of the experts' opinions, if error, was harmless. We would observe that the first point was not mentioned by the trial court and amounts to mere speculation. The only reason given by the trial court for the exclusion of the evidence (that the proposed testimony offered a legal conclusion) is erroneous. The second point, while accurate, does not address the majority's ruling that the experts were improperly prohibited from testifying as to the reasonableness of Goodall's reliance. The third point is additional speculation.

CONCLUSION

The judgment of the trial court is reversed and the matter is remanded for further proceedings consistent with this opinion. Costs of the appeal are assessed against the appellee, for which execution may issue if necessary.


_____
ANDY D. BENNETT, JUDGE