IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 12, 2010 Session

## IN RE SPENCER E.

**Appeal from the Juvenile Court for Williamson County**
**No. 27964      Jane C. Franks, Judge**

**No. M2009-02572-COA-R3-JV - Filed January 20, 2011**

Father filed a petition to relocate with the parties' minor child, and the trial court denied his petition. On appeal, Father argues that the trial court made evidentiary and procedural errors necessitating vacating its decision, that the trial court's decision denying his petition to relocate was erroneous, and that the trial court erred in declining to award him his attorney fees in defending against Mother's petition for dependency and neglect. We affirm the decision of the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Connie Reguli, Brentwood, Tennessee, for the appellant, Christopher E.

James Timothy Street, Franklin, Tennessee, for the appellee, Heather W.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Heather W. ("Mother") and Christopher E. ("Father") were divorced in 2004 in Williamson County Chancery Court. Pursuant to an agreed parenting plan, Father became the primary residential parent of the parties' two minor children, Ethan and Spencer.[1] Mother had parenting time on Wednesdays after school and every other weekend. She was required to pay monthly child support.

---

[1]Ethan has now reached majority and is not involved in this appeal.

In October 2007, Mother filed in juvenile court a dependency and neglect petition regarding Spencer. Mother alleged that Spencer made threats against some neighborhood playmates and that Father inappropriately disciplined Spencer by getting out a gun and telling the child to point it at Father. A guardian ad litem and court-appointed special advocate (CASA) were appointed by the court. After a hearing in December 2007, the juvenile court found probable cause that Spencer was dependent and neglected. While Spencer was to remain in Father's custody, the court ordered counseling and ordered Father to secure all of his weapons. A final hearing, originally scheduled for January 2008, was continued.

In August 2009, Father filed a petition in juvenile court to relocate and for criminal contempt for failure to pay child support. The two actions were subsequently bifurcated and the contempt petition was transferred to chancery court. Father's relocation petition alleged that he and his new wife had been offered positions in Atlanta, Georgia. Mother opposed Father's petition to relocate. The court appointed a CASA, and Father moved to relieve the CASA on the grounds that the prior dependency and neglect petition had never been adjudicated and that there were no other allegations for which the appointment of a CASA was appropriate.

Mother filed an amended petition for dependency and neglect in October 2009. She alleged several instances of misconduct by Father, including telling Spencer to find a ride to school after he missed the bus, telling the child that Mother did not love the child, making derogatory comments about Mother, and failing to take the child to the dentist for tooth pain. Mother also alleged that Father had said to Spencer that Father hated Ethan because he went to live with Mother and that Spencer should "think about that before you go into court and tell them what you want."

The final hearing on the dependency and neglect petition and the petition to relocate began on October 30, 2009.[2] The trial court talked with Spencer in chambers with counsel present but did not allow the court reporter to be present. After the first day of the hearing, Father filed a motion asking the trial judge to recuse herself based upon the interview with the child in chambers without a court reporter present. The motion to recuse also asserted that the trial court erred in allowing the CASA report to be an exhibit. The court denied Father's motion to recuse and the trial continued on November 13, 2009.

During the trial, the court heard from the following witnesses: Mother; Father; Dr. Janie Barryman, psychologist for Spencer since 2007; Father's new wife; Mother's new husband; Sandra Juarez, assistant principal at Spencer's school; Mary Ferrell, school counselor; Martha Johnson, CASA; Delana Andrews, Spencer's teacher; and Stephanie

---

[2]Both parties agreed to try the two matters together.

Black, DCS investigator. In addition, Spencer returned and testified in the courtroom with the court reporter present.

The trial court took the case under advisement and issued its decision on November 20, 2009. The court found no clear and convincing evidence of dependency and neglect and dismissed Mother's amended petition for dependency and neglect. As to Father's petition to relocate, the court made the following pertinent findings:

> [T]he Court does not find that the father's proposed relocation to Atlanta, Georgia has a reasonable purpose as the father and step-mother both testified that their employment does not require the relocation, there is no money involved thus a lateral move with only the possibility of future enhancements. There are no family members in the Atlanta area with no specific plans for after school care of the child in a new and strange location. The father testified his work prevents him from spending a lot of recreational time with the child except during the summer. Therefore, it is reasonable to believe that time would be further limited in a new environment and new position leaving the child alone much more.
>
> The child has been diagnosed with ADHD and is currently taking medication, participating in therapy, enrolled in a stable school environment and has friends and extended family in this area. Pursuant to TCA 36-6-108(d)(1)(B), the Court finds that the relocation poses a serious threat of harm, both emotionally and physically. The child's therapist and school personnel testified that the child is in great fear of not seeing his mother again and this fear is very real to him.
>
> The Father testified he wanted to move to Atlanta because it would be better for the child to be farther from the mother due to the difference of the mother's and father's parenting styles. Pursuant to TCA 36-6-108(d)(1)(C), the Court finds that this amounts to vindictive motivation which would most certainly defeat or deter the scheduled visitation and result in less time for the child to spend with his mother with whom he has a very strong [emotional] attachment and looks to fulfill those needs. Further, the Court finds that the relocation is not in the best interest of the child.

The court therefore denied Father's petition to relocate. The court further ordered that, as long as Father remained in the jurisdiction, there would be no change in custody. Each party was ordered to be responsible for his or her own attorney fees and costs.

Father appeals and raises several issues: (1) whether the trial was so tainted by evidentiary and procedural errors that the trial court's relocation decision should be vacated; (2) whether the trial court erred in not allowing Father to relocate with the child; and (3) whether the trial court erred in failing to award Father his attorney fees.

ANALYSIS

I.

Father asserts a number of evidentiary and procedural errors and argues that these errors warrant reversal of the trial court's relocation decision.

By agreement of the parties, Father's petition to relocate and Mother's dependency and neglect petition were tried together. On appeal, however, only the trial court's rulings regarding Father's petition to relocate are at issue. A juvenile court's dependency and neglect decision is appealed de novo to circuit court. Tenn. Code Ann. § 37-1-159(a). Thus, only procedural or evidentiary errors affecting the relocation decision are relevant here.

Interview of child

Father argues that the trial court committed reversible error by interviewing Spencer in chambers with attorneys present but without a court reporter. He relies on the case of *Rutherford v. Rutherford*, 971 S.W.2d 955, 956 (Tenn. Ct. App. 1997). In that case, which involved a petition to change custody, the trial court interviewed the child in chambers without attorneys or a court reporter. *Id.* Because it was unable to review all of the proof, including the trial court's private interview with the child, the court found reversible error. *Id.* at 956-57. While acknowledging that a trial judge "has discretion to interview children apart from the courtroom setting if he considers it is in the best interest of the child," the appellate court stated that the trial court must examine the child in the presence of the attorneys for each side and with a court reporter present. *Id.* Furthermore, the court stated, to allow for review on appeal, there must be a transcript of the evidence filed. *Id.* at 957.

We find *Rutherford* to be distinguishable from the present case, however, because the attorneys were present in chambers when Spencer talked to the trial court. As we pointed out in *Walker v. Stevens*, No. M2007-02858-COA-R3-CV, 2008 WL 4830805, at *7 (Tenn. Ct. App. Nov. 5, 2008), a case in which the child was questioned in the presence of the parties and their attorneys without a court reporter, the court's reversal in *Rutherford* was based on the absence of a transcript of the interview for the court to review. In *Walker*, unlike in *Rutherford*, we found that the absence of a transcript did not hamper our ability to review the decision at issue. *Id.* The appellant could have filed a statement of the evidence in accordance with Tenn. R. App. P. 24(c) in order to preserve the testimony on appeal but

failed to do so.  *Id.* at *8.  Similarly, in the present case, Father could have filed a statement of the evidence but failed to do so.  We find no error here.[3]

## Hearsay

Father next assigns error to various decisions by the court to admit statements he considers inadmissible hearsay in violation of Tenn. R. Evid. 803(25).

With respect to decisions regarding the admission or exclusion of evidence, we review the trial court's decision under an abuse of discretion standard.  *Brown v. Crown Equip. Corp.,* 181 S.W.3d 268, 273 (Tenn. 2005); *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004).  Under this standard, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007).  So, "we are not permitted to substitute our judgment for that of the trial court." *Id.*  An appellate court "will set aside a discretionary decision only when the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence." *White v. Vanderbilt Univ.,* 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). We review a trial court's discretionary decision to determine: "(1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives." *Id.*

Tenn. R. Evid. 803(25) gives the following hearsay exception:

Children's statements. – Provided that the circumstances indicate trustworthiness, statements about abuse or neglect made by a child alleged to be the victim of physical, sexual, or psychological abuse or neglect, offered in a civil action concerning issues of dependency and neglect pursuant to Tenn. Code Ann. § 37-1-102(b)(12), issues concerning severe child abuse pursuant to Tenn. Code Ann. § 37-1-102(b)(21), or issues concerning termination of parental rights pursuant to Tenn. Code Ann. § 37-1-147 and Tenn. Code Ann. § 36-1-113, and statements about abuse or neglect made by a child alleged to be the victim of physical, sexual, or psychological abuse offered in a civil trial relating to custody, shared parenting, or visitation.  Declarants of age thirteen or older at the time of the hearing must testify unless unavailable as defined by

_____

[3]The other two cases cited by Father are inapposite.  In *Haines v. Haines*, No. E2005-02180-COA-R3-CV, 2007 WL 27112, at *6 (Tenn. Ct. App. Jan. 4, 2007), the child was interviewed outside of the physical presence of the attorneys.  The court in *Mulkey v. Mulkey*, No. E2004-00590-COA-R3-CV, 2004 WL 2412610, at *5 (Tenn. Ct. App. Oct. 28, 2004), did not reach the question of the trial court's interview of the children in chambers, but the attorneys were present.  The language relied upon by Father appears in a concurring opinion.  *Id.* at *6.

Rule 804(a); otherwise this exception is inapplicable to their extrajudicial statements.

Father lists the following instances of testimony admitted by the trial court as being erroneous under Tenn. R. Evid. 803(25):

1. Mother's testimony that Spencer said Father "hates communicating with me, dad doesn't want to talk to me, my dad wishes . . . I would disappear, he calls me names and tells Spencer not to mind what I say . . . ."

2. Mother's testimony that Spencer said he had "something to tell [Mother] but he was afraid it would hurt my feelings." Spencer then told Mother derogatory comments made by Father about her.

3. Mother's testimony that Spencer told her that Father said Mother could not sign his agenda from school.

4. Testimony from the CASA that Spencer said he was afraid he would not see Mother again if he moved to Atlanta with Father.

5. Testimony from Ms. Juarez, the assistant principal, that she got a call from a neighbor inquiring if Spencer was at school.

6. Testimony from Ms. Juarez that Spencer said he wanted to be with Mother.

7. Testimony of Ms. Ferrell, school counselor, that Spencer told her that Father did not want Spencer to talk to her about family issues.

Father argues that the trial court's failure to exclude this evidence, in violation of Tenn. R. Evid. 803(25), "was highly prejudicial to the Father on the issue of relocation."

Tenn. Code Ann. § 36-6-108(d)(1) governs the standards to be applied by a court in deciding the relocation petition of a parent who spends the greater amount of time with the child, as in the present case:

The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:

(A) The relocation does not have a reasonable purpose;

(B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or

(C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

Under these provisions, the parent seeking relocation will be allowed to relocate with the child unless one (or more) of the three statutory grounds is found to exist. The burden of proof is upon the parent opposing the relocation to establish one of these three grounds. *Clark v. Clark*, No. M2002-03071-COA-R3-CV, 2003 WL 23094000, at *3 (Tenn. Ct. App. Dec. 30, 2003). If the opposing parent cannot prove any of the three grounds, the relocation shall be permitted. Tenn. Code Ann. § 36-6-108(d)(1). If the opposing parent successfully establishes one or more of the three statutory grounds, the court must then proceed to determine whether relocation would be in the child's best interests. Tenn. Code Ann. § 36-6-108(e).

A reviewing court should not find reversible error based on an erroneous evidentiary ruling "unless a substantial right of the party is affected." Tenn. R. Evid. 103(a). Pursuant to Tenn. R. App. P. 36(b), the erroneous exclusion of evidence does not require reversal of the judgment unless "error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." *See also White*, 21 S.W.3d at 223. Father offers no argument as to how the objectionable evidence may have prejudiced his case for relocation. As to items 3, 5, and 7 in Father's list of testimony, we see no relationship between the evidence and the issues to be decided with respect to relocation. Therefore, we need not further consider these items of testimony. Items 1 and 2 reflect hostility by Father toward Mother; item 1 also suggests that Father attempted to undermine the child's relationship with Mother. Items 4 and 6 reflect the child's fears about moving and his expression of a desire to be with Mother.

The trial court found that all three of the statutory grounds (in Tenn. Code Ann. § 36-6-108(d)(1)) for disputing the relocation of a primary residential parent existed. Only one ground need be found in order to rebut the presumption in favor of the relocation. In finding that relocation posed a serious threat of harm to the child, the trial court did note that "[t]he child's therapist and school personnel testified that the child is in great fear of not seeing his mother again and this fear is very real to him." It appears, then, that the trial court credited the statements of other witnesses concerning the child's fears, not those of the CASA to which Father objects on appeal. Dr. Barryman testified that "as slowly as time's gone on, [Spencer] has worked himself into thinking that he'll never see his mom again and that it's going to be the end of the world." She later testified that Spencer's feelings about the proposed move "went back and forth." Father did not object to Dr. Barryman's testimony.

Ms. Ferrell, the school counselor, testified that Spencer expressed anxiety about moving and not seeing his mother as often. Father did not object to this testimony.

In finding that Father had a vindictive motive in wanting to relocate, the trial court cited only Father's testimony. Father acknowledged making a statement that putting distance between Spencer and Mother would be beneficial to Spencer. He then testified:

> I made it [the statement] because there – because of the issues that have been going on between his mother and I and the very different parenting styles. The day-to-day involvement with keeping Spencer on track and making sure that he's got schoolwork done, making sure that he gets to football practice and makes it to games and that he's doing everything in his life that he needs to, it gets very hard for me to make sure that all of those things fall into place when there's constant interruption and constant – You know, I'm hearing of people pulling him out of class and he's – he's calling his mother from school and, you know, that disruption are things that throw him off track and get him off schedule, and then he kind of spirals from there. So the hope is that by being in Atlanta and not having that – that really day-to-day, that he can continue to hone in and focus on what it is he needs to get done. But then, when he comes to visit with his mother, that he can focus on playing and having fun and spending time just with her and not worrying about schoolwork and everything else that – that's going on with his life. So it's more of the mind set of making kind of more clear delineation in his life that there's – there's work and there's play – although, he gets a lot of play with me . . . .

We see nothing in the record to indicate that, absent the testimony to which Father objects, the trial court's decision "more probably than not" would have been different. Tenn. R. App. P. 36(b). There is other evidence in the record showing Father's hostility toward Mother, his desire to put distance between Spencer and Mother, Spencer's anxiety about moving, and his close emotional attachment to Mother. We find no reversible error.

### Evidence from CASA

Father assigns error to the court's admission into evidence of the CASA report and to the testimony of the CASA. He argues that the report itself is hearsay and contains inadmissible hearsay from other sources. Moreover, he asserts, it was improper for the trial court to allow the CASA to give her opinion concerning the appropriate custody disposition for Spencer.

Father does not offer any explanation or argument as to how any errors made by the trial court with respect to the CASA's report or testimony affected the outcome of the court's

decision on the relocation petition. As Father points out, the statute authorizing the appointment of a CASA applies to dependency and neglect proceedings. *See* Tenn. Code Ann. § 37-1-149(b). In allowing the CASA report to be admitted into evidence, the trial court specifically referenced Tenn. Code Ann. § 37-1-129(d) regarding dependency and neglect proceedings. We see nothing in the trial court's written decision or in the transcript to suggest that the trial court considered any evidence from the CASA in its determination regarding Father's relocation petition. In fact, the CASA's recommendations include the following statement: "The court should consider placement with Spencer's mother and stepfather in accordance with his expressed wishes." The court did not accept this recommendation since Father remains the primary residential parent.

Given the absence of evidence that the trial court relied upon CASA evidence in making its relocation decision, we deem it unnecessary to examine all of the errors alleged by Father.

### Catchall argument

Father's final argument is that "[t]he hearing was [so] riddled with evidentiary objections [sic] including speculation, improper opinion evidence, and inadmissible hearsay that the trial court's order should be vacated." Father references all of the evidentiary issues already discussed and rejected above and then sets forth other evidentiary rulings he considers erroneous. Father asserts that the trial court erred in allowing Mother to testify about changes made to the parenting plan during the mediation process and about a letter received from the mediator; in allowing Mother and the school counselor to testify about what Spencer would feel if he had to move to Atlanta; in denying Father's request to review a document used by Mother during her testimony; in allowing Mother and the school counselor to give lay opinion testimony; and in allowing certain hearsay testimony.

As to evidence from the mediation process, Mother's attorney questioned her, over Father's objection, regarding a letter and draft parenting plan sent to her by the mediator who conducted mediation with the parties at the time of their divorce. The draft parenting plan provided that, if either party elected to relocate outside the county, the children would remain with the non-relocating parent "unless good cause can be shown as to why it would be in the best interest of the children to relocate." The proposed language established a presumption that staying with the remaining parent was in the children's best interest. In the plan actually signed by the parties, however, this relocation language was limited in applicability to the 2004-2005 school year. According to Mother's testimony, she was not aware of the change made in the final version of the parenting plan at the time when she signed it. Mother offered the evidence concerning the draft parenting plan as evidence of Father's vindictiveness in

proposing to relocate to Atlanta. Father argues that the draft parenting plan and letter are inadmissible under Tenn. R. Evid. 408 concerning compromise and offers to compromise.[4]

We do not consider the evidence relied upon by Mother, which relates to the parties' divorce in 2004, to be probative as to Father's vindictiveness at the time of the relocation he proposed in August 2009. In its decision finding Father's purpose to be vindictive, the court relied upon Father's testimony at the trial in November 2009 and made no mention of the evidence concerning the negotiation of the original parenting plan. There is nothing to suggest that any error in the court's admission of the draft parenting plan affected the outcome of the relocation decision.

Father next argues that the trial court erred in allowing Mother to testify that if Spencer moved to Atlanta, she thought he would be "distraught and hopeless."[5] Father argues that this testimony amounts to speculation and was not based on personal knowledge. Father relies on Tenn. R. Evid. 602, which provides that a witness may not testify as to matters about which he does not have personal knowledge. The trial court allowed the testimony on the ground that a mother should be able to "say what she thinks her . . . child would feel," based on her observations and knowledge of the child. One issue under consideration was the effect of the move on Spencer, a matter about which no one could be certain. *See* Tenn. Code Ann. § 36-6-108(d)(1)(B). We cannot say that the trial court abused its discretion in allowing Mother to offer her insights as to how Spencer would fare with such a move. Moreover, even if the trial court's ruling was in error, there is nothing in the record to indicate that the trial court relied on this testimony in making its relocation decision.

Father's next argument, which consists of four sentences without any citation to caselaw, is that the trial court should have required Mother to reveal the notes she referenced during her testimony. When asked about being invited to dinner by Father and his new wife, a dinner at which they announced their plans to move to Atlanta, Mother referred to a document she held in her hands. Father's attorney requested to look at what Mother was referring to, and she stated that is was her personal diary and that she was using it to recall relevant dates. The court ruled that Mother did not have to let Father's attorney look at the diary. Tenn. R. Evid. 612 generally provides that an adverse party shall have the right to

_____

[4]Tenn. R. Evid. 408 provides, in pertinent part, that "[e]vidence of conduct or statements made in compromise negotiations is likewise not admissible." The rule excludes the use of such evidence "to prove liability for or invalidity of a civil claim or its amount or a criminal charge or its punishment." It allows the use of such evidence for other purposes, such as proving witness bias.

[5]Father also generally mentions testimony of the school counselor concerning what Spencer would feel if he moved to Atlanta but does not cite specific testimony in the transcript. We consider this argument waived as we are unable to discern the particular testimony at issue.

inspect and cross-examine a witness concerning writing used by a witness to refresh her memory. If, as here, the witness claims that the writing contains unrelated matters, the court is to examine the writing, excise unrelated portions, and allow the adverse party to see the rest. The rule further provides that "[a]ny portion withheld over objections shall be preserved and made available to the appellate court in the event of appeal."

While it appears that the trial court failed to follow the procedures outlined in Tenn. R. Evid. 612, we see no evidence that this ruling had any effect on the outcome of the relocation decision. The testimony in question had to do with Father's announcement of his intention to move, and the specific date upon which that dinner occurred was not pertinent as to any determination made by the trial court with respect to the relocation petition.

Father also assigns error to the trial court's admission of Mother's statement that Spencer would be "distraught and hopeless" if he had to move to Atlanta on the basis that this was improper lay opinion testimony. Tenn. R. Evid. 701 allows lay opinion testimony only if it is "rationally based on the perception of the witness and helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." We find no abuse of discretion in the trial court's implicit determination that the testimony of Mother met these criteria, and Father's argument does not set out any reasons to support the opposite conclusion. Father also cites Mother's testimony that Spencer would be afraid that he would not be able to contact her if he were in Atlanta; as Father did not object to this testimony at the hearing, we consider the issue waived. Tenn. R. Evid. 103.

Father similarly asserts that the trial court erred in admitting the assistant principal's testimony that Spencer relied on Mother for emotional support. According to Father's position, this was improper lay opinion testimony. Given Ms. Juarez's position as principal and her testimony regarding her relationship with Spencer, we find no abuse of discretion in the trial court's admission of her observations concerning the child.

At the end of his laundry list of asserted evidentiary errors, Father references more hearsay problems. In addition to the CASA's testimony and report, already addressed above, Father points to the following testimony by Mother:

> Spencer has told me that he would be lost if he's there [in Atlanta], that he won't have anybody, he won't have any family. He – he told me that his dad has told him that he will not be able to –

Father objects that this testimony contains hearsay and hearsay within hearsay (Mother's statement about what Spencer told her that Father said). With respect to the double hearsay, Father objected before Mother finished giving the hearsay statement and the witness discontinued that line of testimony. As to Mother's testimony about Spencer's statements

to her, Father fails to present any evidence or argument to support the conclusion that this testimony "more probably than not" affected the trial court's decision on the relocation petition. *See* Tenn. R. App. P. 36(b).

While the trial court may have made a few errors with respect to the admission of evidence, we find no support for Father's bald assertion that the court "so abused her discretion in evidentiary matters in this proceeding that her ruling should be vacated as it relates to relocation." On the contrary, we find no evidence to indicate that the trial court's decision to deny the relocation petition was prejudiced by any evidentiary errors.

## II.

Having reviewed and rejected Father's evidentiary arguments, we proceed to his argument with respect to the merits of the court's relocation decision. We review the trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

As discussed above, this case is governed by the standards set out in Tenn. Code Ann. § 36-6-108(d). Under these provisions, the parent seeking relocation (who spends the greater amount of time with the child) "shall be permitted to relocate with the child" unless the court finds one (or more) of three criteria to be met:

(A) The relocation does not have a reasonable purpose;

(B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or

(C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

Tenn. Code Ann. § 36-6-108(d)(1). The burden of proof is on the parent opposing the relocation to establish one of these three grounds. *Clark*, 2003 WL 23094000, at *3. If the opposing parent cannot prove any of the three grounds, the relocation shall be permitted. Tenn. Code Ann. § 36-6-108(d)(1). If the opposing parent successfully establishes one or more of the three statutory grounds, the court must then proceed to determine whether relocation would be in the child's best interests. Tenn. Code Ann. § 36-6-108(e).

In this case, the court found all three of the statutory criteria were met and therefore proceeded to the best interest determination. Father argues that the trial court erred with respect to all three criteria and that the relocation therefore should have been allowed. As previously stated, the statute only required the court to find one of the criteria in order to defeat the presumption in favor of the relocation. We have concluded that the evidence does not preponderate against at least two of the statutory criteria found by the trial court to exist.

The first statutory criterion is that "[t]he relocation does not have a reasonable purpose." Tenn. Code Ann. § 36-6-108(d)(1)(A). With respect to this criterion, the trial court made the following findings:

> [T]he Court does not find that the father's proposed relocation to Atlanta, Georgia has a reasonable purpose as the father and step-mother both testified that their employment does not require the relocation, there is no money involved thus a lateral move with only the possibility of future enhancements. There are no family members in the Atlanta area with no specific plans for after school care of the child in a new and strange location. The father testified his work prevents him from spending a lot of recreational time with the child except during the summer. Therefore, it is reasonable to believe that time would be further limited in a new environment and new position leaving the child alone much more.

Father argues that the trial court failed to consider Mother's failure to pay child support and cites *Winans v. Winans*, No. M2004-02566-COA-R3-CV, 2006 WL 1865027, at *6 (Tenn. Ct. App. June 30, 2006). That case, however, concerned a different statutory provision, Tenn. Code Ann. § 36-6-108(c), applicable when both parents spend substantially equal amounts of time with the child. In that context, the court stated that the mother's willful failure to pay child support was relevant to the best interest determination. *Id.* Since our case involves a different statutory provision and there is no finding of willful failure to support, we consider *Winans* inapposite. Nothing in *Winans* indicates a parent's failure to pay child support is relevant to the statutory grounds regarding a relocation decision.

Father asserts that there was a reasonable purpose for his proposed move because his new wife had been offered a position in Atlanta. Although the new position did not involve a pay raise, the new wife testified that the move would give her the opportunity to apply for partner. She further testified that she did not think she would ever be offered partner if she remained in Nashville. Father also argues that moving to Atlanta would be better for him in his job because he would be closer to the company's other executives.

Father cites *Webb v. Webb*, No. E2008-00862-COA-R3-CV, 2009 WL 348362 (Tenn. Ct. App. Feb. 11, 2009), for the proposition that "[a] salary increase and career advancement

opportunities 'can be a factual predicate to constitute a reasonable purpose for relocation.'" *Id.* at *2 (citing *Roberts v. Roberts*, No. E2005-01175-COA-R3-CV, 2005 WL 2860199, at *6 (Tenn. Ct. App. Oct. 31, 2005)). However, he fails to cite any caselaw to support the proposition that the possibility of career advancement alone, without any immediate salary increase, is sufficient to establish a reasonable purpose. Mere "belief and hope" in the possibility of career advancement is not sufficient to establish a reasonable purpose. *Slaton v. Ray*, No. M2004-01809-COA-R3-CV, 2005 WL 2756076, at *3 (Tenn. Ct. App. Oct. 24, 2005).

Moreover, this court recognizes that determinations concerning whether a proposed move has a reasonable purpose are fact-intensive and require a thorough examination of the unique circumstances of each case. *See id.* In the present case, the court also considered the lack of availability of family support in Atlanta and the likely increase in Spencer's time alone at home. We cannot say that the evidence preponderates against the trial court's determination that Father's proposed move lacked a reasonable purpose.

As to the third statutory criterion, the vindictiveness of the relocating parent's motive, Tenn. Code Ann. § 36-6-108(d)(1)(C), the court made the following findings:

> The Father testified he wanted to move to Atlanta because it would be better for the child to be farther from the mother due to the difference of the mother's and father's parenting styles. Pursuant to TCA 36-6-108(d)(1)(C), the Court finds that this amounts to vindictive motivation which would most certainly defeat or deter the scheduled visitation and result in less time for the child to spend with his mother with whom he has a very strong [emotional] attachment and looks to fulfill those needs.

Tenn. Code Ann. § 36-6-108(d)(1)(C) provides that a parent's motive is vindictive "in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child." In finding Father's motive to be vindictive, the trial court relied heavily upon Father's testimony, quoted in Part I above, about his desire to put distance between Spencer and Mother. Particularly in light of the trial court's superior ability to assess witness credibility, we cannot say that the evidence preponderates against the trial court's finding that Father's motive for relocating was vindictive.

Father does not address the trial court's best interest determination on appeal. Having determined that the evidence supports the trial court's findings concerning at least two of the statutory criteria for rebutting the presumption in favor of relocation under Tenn. Code Ann. § 36-6-108(d)(1), we affirm the trial court's decision.

III.

Father argues that the trial court erred in failing to award him his attorney fees by virtue of his success in defending against Mother's dependency and neglect petition.

Decisions to award attorney fees are reviewed under an abuse of discretion standard. *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001). Thus, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." *Caldwell*, 250 S.W.3d at 869.

Father's theory is that Mother's dependency and neglect petition was in retaliation for Father's petition to relocate and that he was entitled to attorney fees under Tenn. Code Ann. § 36-5-103(c) because he was essentially defending the original parenting plan by defending against Mother's dependency and neglect action. We see several flaws in Father's argument. Chief among them is the fact that dependency and neglect decisions are appealed from juvenile court to circuit court for a de novo trial. Tenn. Code Ann. § 37-1-159(a). Thus, Father's disagreement with the trial court's failure to award attorney fees to him in the dependency and neglect matter should have been appealed to the circuit court first. Moreover, even assuming this court had jurisdiction, we find no abuse of discretion in the trial court's denial of Father's request for attorney fees.[6]

CONCLUSION

The judgment of the trial court is affirmed. Costs of the appeal are taxed against the appellant, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[6]Father argues on appeal that he should be awarded $15,074, the full amount of his attorney fees, even though these fees reflect his attorney's work on the relocation action as well as the dependency and neglect action.