IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2010 Session

IN RE FAITH F.

Appeal from the Juvenile Court for Wilson County
No. 11363     Charles B. Tatum, Judge

No. M2009-02473-COA-R3-JV - Filed February 17, 2011

Father filed a petition to relocate with minor child, and mother filed a petition for change of
custody. After a hearing, the trial court denied father's petition to relocate and mother's
petition to change custody but increased mother's parenting time. A week after the court's
order was entered, mother filed a petition to reopen the proof, and the court granted her
motion. After another hearing, the trial court granted mother's petition for a change of
custody. On appeal, father argues that the trial court erred in denying his petition to relocate,
in reopening the proof, and in granting mother's petition to change custody. We affirm the
decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL,
P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Thomas A. Miller, Nashville, Tennessee, for the appellant, Blaine F.

Debra L. Dishmon, Lebanon, Tennessee, for the appellee, Amy P.

Elizabeth Lee Luongo Youmans, Lebanon, Tennessee, Guardian Ad Litem.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Amy P. ("Mother") and Blaine F. ("Father") are the parents of Faith F., born in 2002.
The juvenile court named Father the primary residential parent of Faith in June 2007 with
Mother having regular parenting time every other weekend and an overnight visit every other
Wednesday.

In November 2008, Father notified Mother of his intent to relocate to Memphis to accept a position as a branch manager for Forsythe Appraisals. Father's income as a real estate appraiser had decreased significantly over the past few years, and the job in Memphis offered him greater income. In December 2008, Mother filed a petition opposing Father's proposed move and a petition for change of custody or, in the alternative, modification of the parenting schedule. Mother asserted that there had been a material change of circumstance since the court's previous custody award in June 2007 and listed a series of allegations to support this assertion, including foreclosure on Father's home and repossession of one of his vehicles, Father's permitting several different women to reside with him, Father's arrest for domestic violence and assault, entry of an order of protection against Father with regard to a former girlfriend, and Father's arrest for DUI.

The matter was tried over several days in May 2009. Witnesses included two police officers who responded to a domestic disturbance at Father's home in June 2007; a landlord in the Memphis area who had talked to Father about renting his property; Mother's new husband; several friends of Mother; Mother's aunt and her former husband; Mother's mother and grandmother; the ex-wife of Mother's new husband; Father's mother; the child's former and current teachers; Father's father; Father; Mother; the child; Father's former wife; a former girlfriend of Father; and a friend of Father. On May 27, 2009, the court announced its ruling in open court, denying Father's petition to relocate and Mother's petition to change custody but granting Mother additional parenting time. The court entered its order to that effect on June 15, 2009.

On June 22, 2009, Mother filed a motion to reopen the proof on her petition to change custody. She alleged that events that occurred after the hearing but prior to the entry of the court's order on June 15, 2009 "seriously compromise the minor child's safety and well being." On June 29, 2009, over Father's objection, the court granted Mother's motion to reopen the proof, suspended the June 15, 2009 order, and awarded temporary custody to Mother with Father having visitation on alternating weekends.

Another hearing was held over two days in August 2009. The court heard testimony from a police officer who responded to a call regarding a fight at Father's home on June 13, 2009; Mother's father-in-law; Father; the child; Mother's brother; Father's probation officer; a human resources officer at Forsythe; Mother; Harvey Martin, Father's friend who was involved in the incident on June 13, 2009; and Father's new wife. After hearing the additional proof, the trial court granted Mother's petition to change custody. In an order entered on October 1, 2009, the trial court made additional findings of fact and set out its reasons for finding a material change of circumstance justifying a change of custody. Father was ordered to pay child support.

Father filed a motion to reopen the proof on September 25, 2009, but later withdrew the motion. This appeal followed.

On appeal, Father argues that the trial court erred in denying his petition to relocate, in reopening the proof, and in awarding Mother custody of the minor child.

ANALYSIS

I.

We begin with the trial court's grant of Mother's motion to reopen the proof, filed a week after the trial court entered its original order denying her petition to change custody.

As our Supreme Court has stated, it is within the trial court's discretion to permit additional proof after a party has announced the close of its proof and, "unless it appears that its action in that regard has permitted injustice, its exercise of discretion will not be disturbed on appeal." *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 149 (Tenn. 1991); *see also Higgins v. Steide*, 335 S.W.2d 533, 535 (Tenn. Ct. App. 1959). Thus, we review such decisions under an abuse of discretion standard. *Simpson*, 810 S.W.2d at 149. Under this standard, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). So, "we are not permitted to substitute our judgment for that of the trial court." *Id*. An appellate court "will set aside a discretionary decision only when the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). We review a trial court's discretionary decision to determine: "(1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives." *Id*.

In the present case, Father emphasizes that Mother's motion to reopen was made after the trial court entered its order on June 15, 2009. This court has previously noted that, "[i]n a case tried without a jury, however, we see no reason to curtail the exercise of sound discretion by the trial judge [to reopen the proof] unless or until the judgment becomes final." *Brookside Mills, Inc. v. Gulfkay Leasing, Inc.*, No. 03A01-9101CH00030, 1991 WL 138513, at *3 (Tenn. Ct. App. July 30, 1991). An order of the trial court does not become final until 30 days after its entry. *See* Tenn. R. Civ. P. 59; Tenn. R. App. P. 4; *Algee v. State Farm Gen. Ins. Co.*, 890 S.W.2d 445, 447 (Tenn. Ct. App. 1994). The order in this case remained under the trial court's control and subject to modification when Mother filed her motion to reopen the proof.

In granting Mother's motion to reopen the proof, the trial court gave the following reasons:

> Based upon an ongoing pattern of behavior as exhibited by Father; this Court's concern that the child was present in Father's home during the most recent physical assault incident; Father's history of having various women staying overnight in his home; and issues this Court has had with Father's credibility, this Court finds that Mother's Motion to Reopen Proof is well taken and should be granted.

Mother based her motion to reopen the proof on incidents that occurred after the last day of the original hearing, and the additional proof admitted at the subsequent hearing was to be limited to events occurring after the original hearing. Thus, this case is distinguishable from cases cited by Father in which the evidence in question was available and could have been presented at the time of the original hearing. *See Psalms, Inc. v. Pretsch*, No. W2008-00653-COA-R3-CV, 2008 WL 5424084, at *7 (Tenn. Ct. App. Dec. 31, 2008); *Brookside*, 1991 WL 138513, at *3; *Higgins*, 335 S.W.2d at 540.

We see no evidence of injustice as a result of the introduction of the evidence in question. The fact that this evidence changed the result reached by the trial court is not determinative "for the trial court is entitled to and should have the benefit of all available evidence for its assistance in arriving at a just determination." *McBay v. Cooper*, No. 01-A-019205-CV-00202, 1992 WL 205256, at *3 (Tenn. Ct. App. Aug. 26, 1992). The injustice that would make the reopening of proof erroneous consists of "serious inconvenience to a party, the jury or the court, or the introduction of further evidence without a fair opportunity for rebuttal." *Id.* Father does not put forth any arguments that such an injustice occurred in this case.

In summary, we find no abuse of discretion in the trial court's decision to allow reopening of the proof under the rare and unique facts of this case.

## II.

The next issue to be addressed is the trial court's decision to grant Mother's request for a change of custody.[1]

---

[1]Father conceded at oral argument that, if this court finds no error in the trial court's change of custody, Father's argument on relocation is moot. Unless he is the primary residential parent or spends substantially equal time with the child, Father cannot seek to relocate with the child. *See* Tenn. Code Ann. § 36-6-108.

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

It is well-established that, in order to modify a parenting plan to change the primary residential parent, the trial court must apply a two-part analysis: the court must find that "both a material change of circumstances has occurred and a change of custody is in the child's best interests." *Kendrick*, 90 S.W.3d at 575. Tenn. Code Ann. § 36-6-101(a)(2)(B) is the relevant statutory provision as to what constitutes a material change of circumstance in the context of a custody change:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

As noted by the court in *Kendrick*, "'[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody.'" *Kendrick*, 90 S.W.3d at 570 (quoting *Blair v. Bandenhope*, 77 S.W.3d 137, 150 (Tenn. 2002)). Several factors to consider when making this determination are whether the change occurred after the entry of the order to be modified, whether the change was known or reasonably anticipated at the time of the original order's entry, and whether the change "'affects the child's well-being in a meaningful way.'" *Id.* (quoting *Blair*, 77 S.W.3d at 150).

In this case, the trial court made detailed findings in its order of October 1, 2009, regarding the facts it considered relevant in determining that there had been a material change of circumstances. The court noted that when making its initial ruling denying the change of custody, the court stated to the parties that "this was a really close case regarding a change of custody" and expressed concerns about Father's questionable decisions regarding his finances and "extracurricular activities," his drinking, the number and frequency of his girlfriends, the fact that his fiancé was married to another man, and his failure to meet the conditions of his probation and to make the resolution of a pending DUI charge a priority. After the proof was reopened, the court heard more evidence:

-5-

[S]ince May 27, 2009 [the date of the court's initial oral ruling], Father was involuntarily terminated from his employment at Forsythe Appraisals; that he is "flat broke busted;" that he pled guilty to DUI 1ˢᵗ on June 4, 2009, was scheduled to serve his forty-eight (48) hours in jail on June 15, 2009 as a result of his DUI conviction, and failed to appear to serve his time; and that Father has, since May 27, 2009, established a relationship with, and married, a different woman than the woman he was engaged to marry during the May hearings. . . . Father further testified that the incident which occurred in his home while the minor child was present on June 13, 2009 at approximately 1:00 a.m. involving Harvey Martin was "just horseplay;" that as a result of the incident Harvey Martin was charged with Aggravated Assault; and that Father received a 4 ½ inch gash above his right eye which required him to go to the hospital and receive numerous stitches to repair the injury.

Father's prior testimony regarding his probation requirements and domestic violence class required as a result of his January 8, 2009 conviction for Domestic Assault and Resisting Arrest was that everything had been taken care of and that he was awaiting the outcome of his petition to relocate to complete his domestic violence class in Memphis. Father again testified during the August 3, 2009 and August 5, 2009 hearings that everything is fine with his probation. However, when Father's probation officer was questioned by this Court on August 5, 2009 as to what Father had done in compliance with his probation since January 8, 2009, the probation officer responded, "nothing." Father's probation officer also testified that Father had failed to report to the Sumner County Jail on June 15, 2009 to serve his forty-eight (48) hours mandatory jail sentence; Father had missed several scheduled appointments; and that Father had been advised after the first missed appointment that any further missed appointments would result in a warrant being issued for violating of his probation. Testimony by the probation officer further revealed that Father is using several different addresses for his residence address; that Father has failed to pay his monthly supervision fees; that Father has further failed to meet the conditions of his probation requiring him to pay $75.00 monthly beginning February 25, 2009 towards assessed court costs totaling $1,963.74; that Father has not started or completed his domestic violence classes; that Father has not completed his "MRT" class; and that Father has not completed the mandatory court ordered 24-hours litter removal requirement.

This Court finds that Father's testimony was not credible regarding the June 13, 2009 incident which occurred in Father's home while the minor child was present and sleeping . . . . Furthermore, this Court finds that the testimony of Harvey Martin, who presented testimony on behalf of Father, was not credible.

Officer Rapp with the Hendersonville Police Department testified that Father's face, chest, stomach and hands were covered in blood, and there was a pool of blood on the front porch. . . . The minor child testified that she saw her Father in this condition, and witnessed the blood on the porch. The minor child further testified that she was awakened by yelling and cursing. The Court finds this to be very disturbing for the minor child. This Court finds that Father's testimony, nor Mr. Martin's testimony, made any sense and is not believable. . . . This Court finds that there has been some manipulation of Mr. Martin's testimony, as Mr. Martin has a lot to potentially gain from trying to pass this off as being just some silly screwing around.

This Court further finds that, although Father testified that he has learned his lesson from the mistakes he made, Father over and over again blames someone other than himself for being the cause of whatever issue arises.
. . . .

Based upon the foregoing, Father's financial status in that he is "flat broke busted," and what this Court finds to be a lack of credibility on the part of Father, this Court finds that a material and substantial change in circumstances has occurred warranting a change of custody to Mother . . . .

Father makes only a cursory argument to support his position that the trial court erred in finding that a material change of circumstances had occurred. With respect to his unemployment and his failure to complete the conditions of his probation or serve his jail time, Father asserts that these circumstances did not affect the child's well-being. He further asserts that he was "the unwitting victim of an assault that occurred while the child was asleep in their home." As to the latter statement, the trial court expressly found Father's version of events not to be credible and that the child was traumatized by the event. Determinations regarding custody often hinge on subtle factors, including the parties' demeanor and credibility during the proceedings. *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App.1996). As a reviewing court, we "give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007).

The trial court's findings, considered together, evidence Father's unstable lifestyle, something that affected the child in that she was exposed to Father's changing relationships with women and to the violence of some of his friends. We cannot find that the evidence preponderates against the trial court's finding that there was a material change of circumstances in this case.

Having found a material change of circumstances, the court went on to find "that it is in the minor child's best interest that a change of custody occur." Father's brief contains no argument on the best interest issue, and we therefore deem it unnecessary to consider the issue in any depth. Many of the court's factual findings quoted above are relevant to the statutory best interest factors set forth in Tenn. Code Ann. § 36-6-106(a).[2] The court also made the following findings regarding Mother's parental fitness:

> [T]his Court is impressed with the commitment and effort Mother has made towards her child. Mother testified that, since she was awarded temporary custody of the minor child on June 29, 2009, Mother has enrolled minor child in gymnastics and cheerleading; Mother has registered the minor child in Mother's designated school zone; and Mother has taken the minor child to her counseling appointments as ordered by this Court on May 27, 2009. According to testimony from Mother and the minor child, they have a close, loving bond.

The evidence does not preponderate against the trial court's best interest determination.

CONCLUSION

The judgment of the trial court is affirmed in all respects. Costs of appeal are assessed against Father, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[2]The court is to consider all relevant factors, including the following: (1) the love, affection, and emotional ties between the parents and the child; (2) the disposition of the parents to provide the child with food, clothing, medical care, education, and other necessary care, as well as the degree to which a parent has been the primary caregiver; (3) the importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; (4) the stability of the family unit of the parents; (5) the mental and physical health of the parents; (6) the home, school, and community record of the child; (7) the reasonable preference of the child; (8) evidence of physical or emotional abuse to the child, to the other parent, or to any other person; (9) the character and behavior of any other person who resides in or frequents the home of a parent and the person's interactions with the child; and (10) each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each parent to facilitate and encourage a close and continuing parent-child relationship between the child and both parents, consistent with the best interest of the child. Tenn. Code Ann. § 36-6-106(a).