IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 5, 2012

## BRIAN LEE HILL v. KIMBERLY DAWN HILL

**Appeal from the Circuit Court for Montgomery County**
**No. MCCCCVOR10487      C.L. Rogers, Judge**

_____

**No. M2011-02253-COA-R3-CV - Filed October 5, 2012**

_____

In this divorce appeal, Husband disagrees with the trial court's decision regarding a residence he purchased during the pendency of the divorce and with the calculation of his child support obligation. We find merit in Husband's arguments, vacate the relevant portions of the divorce decree, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Melissa A. King, Clarksville, Tennessee, for the appellant, Brian L. Hill.

Kimberly Dawn Hill, no brief filed.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

Brian Lee Hill ("Husband") and Kimberly Dawn Hill ("Wife") were married in November 1999. During their marriage, Wife gave birth to two children. In December 2009, Husband filed this action for divorce based upon irreconcilable differences and inappropriate marital conduct.

In December 2010, while the divorce action was pending, Husband purchased a home in Clarksville, Tennessee for $199,000; the deed of trust states the amount of secured debt as $194,836. Although Husband had filed a motion in February 2010 requesting permission to purchase the property and classification of the home as his separate property, this motion

was never heard by the court.

*Trial testimony*

The case was tried on August 15, 2011. Husband testified that he completed law school and then began working as an attorney during the marriage. Wife did not work consistently during the marriage and only did seasonal tax work after the parties' daughter, Aubrey, was born in 2000. The parties moved to Tennessee from West Virginia in 2007. According to Husband, they separated in December 2009 and Wife moved back to West Virginia with the two children.

Husband testified as to his earnings from May 2007 through the end of 2010 and submitted tax documents for 2010.

As to the home he purchased after the parties' separation and during the pendency of the divorce, Husband stated that Wife did not contribute to the down payment and had never resided in the home. He testified that the house was in poor condition when he bought it and needed a lot of work. On cross-examination, Husband stated that his monthly mortgage payment was $1,321, whereas prior to the purchase he paid rent of approximately $650 a month. Although Husband applied for the mortgage as a married person, Wife was not a co-borrower on the mortgage and was not listed on the deed. As to the $10,000 down payment, Husband testified that he had saved that money during the separation while living with his current girlfriend. Wife introduced into evidence a December 2010 State of Tennessee Real Estate Appraisal Card showing a total appraised value of $259,000 on the property.

Husband also testified that he paid off several marital debts during the parties' separation, including a debt to the IRS of $13,000, a Visa credit card debt of $7,500, a Mastercard debt of $5,000, and a $3,000 debt to pay off Wife's vehicle, a Nissan Xterra. Husband testified that he owed $75,000 to $80,000 in student loans and that most of the loan proceeds had been used for the parties' living expenses while he was in law school. He also owed $22,000 to the IRS for the 2010 tax year.

Husband testified that he signed the birth certificate when Logan was born in 2004 but he subsequently learned that Logan was not his biological child. DNA testing confirmed that Husband was not Logan's biological father. According to Husband, he had offered to adopt Logan.

Wife testified that she and Husband agreed that she would stay home and take care of Aubrey after her birth in 2000. She agreed that Husband was not the biological father of Logan. Since moving back to West Virginia in 2009, Wife had started working fulltime for

the West Virginia Secretary of State. Her current annual income was $23,500.

Wife stated that she had never agreed to Husband's purchase of real property during the pendency of the divorce. She testified as to her current retirement benefits.

*Decision of trial court*

In its final decree entered on September 15, 2011, the trial court found that Husband was not Logan's legal father and that, therefore, only Aubrey would be included in the permanent parenting plan of the court. Wife was designated the primary residential parent, with Father having parenting time on 54 days of the year (one weekend a month, three weeks during the summer, and certain holidays). Child support was set at $1,269 a month based upon a gross monthly income of $9,695.00 for Husband and $1,958.34 for Wife. On the child support worksheet, Wife was given credit for $36.09 per month for health insurance premiums and $40 per week for childcare expenses during the school year ($140 per month for the year).

As to Husband's purchase of real property during the pendency of the divorce, the court ruled: "The real property is marital property, owned by both parties as tenants in common, and the Defendant/Mother is therefore entitled to a share of the property." The court then stated that Husband valued the property at $199,900 while Wife valued it at $259,000.

The Court ordered that Husband was responsible for his student loans, for his 2010 tax liability, and "all other debts, including those incurred during the marriage and those he has incurred since the date of separation." With respect to its decision regarding Husband's student loans, the trial court found that Husband "had already incurred some of the student loans prior to the marriage, and he has the ability to pay them." As to Husband's $22,000 tax liability for 2010, the Court found this debt "to be the result of a voluntary act of [Husband] and not the responsibility of [Wife]." The court also found that it was "equitable" for Husband to pay off the other marital debts.

On appeal, Husband challenges the trial court's division of the marital property and debts as well as certain provisions of the permanent parenting plan.

ANALYSIS

1.

Husband's first argument is that the trial court erred in granting Wife an interest in

Husband's residence and failed to make an equitable distribution of the marital assets and debts.

Decisions concerning the division of marital property are necessarily fact-specific. *Edenfield v. Edenfield*, No. E2004-00929-COA-R3-CV, 2005 WL 2860289, at * 7 (Tenn. Ct. App. Oct. 31, 2005). A trial court has a great deal of discretion in determining the manner in which it divides marital property, and an appellate court will generally defer to a trial court's decision unless that decision is inconsistent with the factors set out in Tenn. Code Ann. § 36-4-121(c) or the evidence preponderates against the decision. *Jolly v. Jolly*, 130 S.W.3d 783, 785-86 (Tenn. 2004); *see also Larsen-Ball v. Ball*, 301 S.W.3d 228, 234-35 (Tenn. 2010).

The first step in the division of marital property is the classification of the parties' property as separate or marital. *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). The trial court classified the residence Husband bought during the pendency of the divorce as marital property. Tennessee Code Annotated § 36-4-121(b)(1)(A) defines "marital property" to include "all real and personal property . . . acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing . . . and including any property to which a right was acquired up to the date of the final divorce hearing . . . ." The residence at issue falls squarely within the definition of marital property.

The trial court is to "equitably divide, distribute or assign the marital property between the parties . . . in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1). After the identification of the marital property, the trial court's next step is to place a reasonable value on each asset subject to division. *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at * 7 (Tenn. Ct. App. Sept. 1, 2006). Valuation of marital assets is a question of fact. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). Each party has the burden of providing competent evidence concerning the value of disputed assets. *Id.* If there is conflicting evidence, the trial court "may assign a value that is within the range of values supported by the evidence." *Id.*

In this case, the trial court did not place a value on Husband's residence, but ordered that the property was "owned by both parties as tenants in common, and that [Wife] is entitled to a share of the property." This court has "repeatedly stressed the importance not only of classifying the parties' property but also placing a specific value on the property when trial courts turn their attention to the financial aspects of a divorce case." *Davidson v. Davidson*, No. M2003-01839-COA-R3-CV, 2005 WL 2860270, at *3 (Tenn. Ct. App. Oct. 31, 2005). In order to fulfill its duty of equitably dividing the marital estate, a trial court must assign a reasonable value to the assets in question. *Fox*, 2006 WL 2535407, at *7; *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *11 (Tenn.

Ct. App. May 13, 2003). This view is consistent with the rule applied in most states that "the trial court must determine the value of all marital property before distributing it." 3 John Tingley & Nicholas B. Svalina, MARITAL PROPERTY LAW § 44:1, at 44-2 (rev. 2d ed. 2006).

Dissolution of a marriage requires a court to "engage in the orderly disentanglement of the parties' personal and financial affairs." *Adams v. Adams*, No. W2007-00915-COA-R3-CV, 2008 WL 2579234, at *5 (Tenn. Ct. App. June 30, 2008) (quoting *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998)). We must conclude that the trial court erred by failing to assign a value to this significant marital asset in order to facilitate the division of the assets. In the absence of a value for Husband's residence and a specification of the amount of Wife's interest, the parties remain tethered to one another financially indefinitely. Moreover, this court cannot evaluate the equity of the trial court's division of the marital assets (and debts) without a valuation and division of this significant asset.

Husband also objects to the trial court's assignment of all marital debts to him. In dividing the marital estate, a court must equitably divide the marital debts as well as the marital assets. *See Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003). Our Supreme Court has defined "marital debts" as "all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing." *Id.* Once the court has identified the marital debts, it must equitably apportion the debts. *Id.* at 814; *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989). Our courts consider the following factors in determining the equitable apportionment of marital debts: "(1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt." *Alford*, 120 S.W.3d at 814.

Because the trial court failed to value and distribute the parties' interests in the house purchased by Husband during the pendency of the divorce, we must vacate the trial court's judgment with respect to the division of the marital assets and debts. On remand, the trial court shall value and divide the parties' interests in Husband's residence and consider the effect (if any) this decision should have on the apportionment of debt.

2.

Husband also asserts that the trial court erred in setting the amount of child support.

Courts are required to use child support guidelines developed by the Tennessee Department of Human Services "to promote both efficient child support proceedings and dependable, consistent child support awards." *Id.* at 249; *see also* Tenn.Code Ann. § 36-5-101(e); Tenn. Comp. R. & Regs. § 1240-2-4-.01(3)(b), (c). Even with the adoption of the

2005 child support guidelines based upon the income shares model, trial courts retain a certain amount of discretion in their decisions regarding child support, which decisions we review under an abuse of discretion standard. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

A trial court abuses its discretion only when it applies an incorrect legal standard or when it reaches a decision against logic or reasoning that causes an injustice to the complaining party. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Under this standard, we are required to uphold the ruling "as long as reasonable minds could disagree about its correctness." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). We must consider "(1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *Huffman v. Huffman*, No. M2008-02845-COA-R3-CV, 2009 WL 4113705, at *8 (Tenn. Ct. App. Nov. 24, 2009) (quoting *Kaatrude*, 21 S.W.3d at 248).

We find merit in several of the points raised by Husband regarding the child support calculation. First, as to Husband's income, the trial court stated that it was adopting the figures for Husband's 2010 income, some of which came from self-employment and some of which came from his employment at a law firm. As to the self-employment portion of Husband's income, the trial court stated that Husband should receive the 15.3% discount provided in the child support guidelines. *See* Tenn. Comp. R. & Regs. § 1240-2-4-.04(4)(a), (d). Nevertheless, the gross monthly income figure used by the trial court is $9,695.00, instead of $8,059.00, the amount reached after subtracting the 15.3% discount from the self-employment income. This appears to be a mistake in calculation.

Second, Husband asserts that the amount credited to Wife for paying their child's health, vision, and dental insurance should be $28.72, whereas the child support worksheet gives Wife credit for $36.09 per month. The trial court expressly adopted the figures given by Husband's attorney at the hearing, which totaled $28.72 per child. Thus, the $36.09 figure used on the child support worksheet is erroneous.

A third error cited by Husband is a $40 monthly credit for daycare during the school year. Contrary to Husband's argument, Wife did testify that she had to pay $40 for after-school child care during the school year. This figure represents the total cost for both children, however. Since Husband is only obligated to pay child support for Aubrey, Wife should not receive credit for the amount required for both children.

Finally, Husband assigns error to the 54 days of parenting time assigned to him on the child support worksheet. With respect to this figure, however, we find no abuse of

discretion. Under the parenting plan, Husband has the child three days during school-year months with three-day weekends, and two days during school-year months without three-day weekends. The parties alternate years for Thanksgiving and Spring Break. While Husband asserts that, based on the children's calendar, his parenting time totals 60 days, our calculations agree with the 54 days stated in the parenting plan. Husband's brief contains no explanation as to how he reached the number 60.

CONCLUSION

We vacate the judgment of the trial court with respect to the division of marital assets and debts and with respect to the amount of Husband's child support obligation. We remand for further proceedings in accordance with this opinion. Costs of appeal are assessed against Wife, for which execution may issue if necessary.


_____
ANDY D. BENNETT, JUDGE