IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs September 20, 2022

**KYNDRA N. ABERNATHY v. ICKER DEREK BARILE**

**Appeal from the Circuit Court for Knox County**
**No. 153134    Gregory S. McMillan, Judge**

_____

**No. E2022-00081-COA-R3-CV**

_____

Kyndra Abernathy ("Petitioner") petitioned the trial court for an order of protection against Icker Derek Barile ("Respondent"), alleging that he sexually assaulted her. After a hearing at which each party proceeded pro se, the trial court issued a one-year protective order, finding that Respondent engaged in sexual penetration without Petitioner's consent and continued after she told him to stop. Respondent appeals, arguing that the trial court erred by considering irrelevant and inadmissible evidence and that its decision was against the weight of the evidence. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Ursula Bailey, Knoxville, Tennessee, for the appellant, Icker Derek Barile.

No appellate brief filed on behalf of appellee, Kyndra N. Abernathy.

**I. BACKGROUND**

Petitioner alleged that Respondent sexually assaulted her after a night of drinking on November 27, 2021. Respondent shares an apartment with Petitioner's boyfriend and at least one other person. The petition alleges:

> After getting back from drinking with my boyfriend and [Respondent], my
> boyfriend fell alseep on the couch and I went to my boyfriend['s] room. A
> few minutes later [Respondent] came into the room and started taking off my

1

clothes and started sexually assaulting me. He left the room and came back again wearing a robe, and continued sexually assaulting me.

The trial court issued a temporary ex parte order of protection on December 10, 2021. The hearing took place on December 22, 2021. Neither party was represented by legal counsel. The trial court heard testimony from the parties and Petitioner's boyfriend Ben Smith. Petitioner testified as follows:

so, when he came into the room, he got on top of me and started having sex with me. I asked him to please get off and he didn't, and a lot of it is worry because I had been drinking so that makes it even harder.

And then, again, he left the room, and I thought like it was done and over, and then for some reason, he came back in. And I guess he put on a robe to make it easier for him. I am not really sure. And that's when it happened again. And like, a lot of it, I just feel like I just like blacked out. I just wanted it to stop.

THE COURT: Okay.

[Petitioner]: And I kept asking if he was done, and he just kept saying "No." That's – that's all I know.

Respondent did not cross-examine Petitioner. He testified that there was mutual consent for the sexual contact and that Petitioner initiated and invited it. Respondent's testimony regarding what happened is as follows:

We did come back that night after drinking, all three of us. With the help of Kyndra that night, I carried Ben back to the apartment. We both tried to sober him up and get him up and go to bed. He wouldn't do it, he just kept saying that he wanted to pass out and sleep on the couch.

After a while of doing that, Kyndra went down to Ben's room. I stayed with Ben for a little while trying to get him to drink some water. Then after a while, I just left and went back to my room. I changed, went back into the kitchen to get more water for myself.

And when I turned the corner, I saw Kyndra naked in the hallway just leaning on the brick wall. When I approached her, I asked her if she was okay, and what she was doing. She asked me if I would get her some water. I did. I went back into the kitchen, got her some water, and when I came back, she was still naked in the hallway waiting for me.

2

When I gave her the water, she took a couple sips then placed the water down on the banister that we have in the hallway, and approached me to kiss me. I pushed her off and told her that this couldn't happen, that Ben was in the living room.

I tried to usher her into the bathroom that was in the hallway to cover her up. she pulled back and grabbed me by the wrists and tried to pull me into Ben's room. I refused and I kept telling her that she needed to go to bed, and she just kept wanting to kiss me, and throw herself at me, basically.

After a while, she ended up getting me into the room. I tried to put her down on the bed without – without anything happening, and she still just kept wanting to kiss me. I eventually told her that it couldn't happen, whatsoever, that Ben was in the room.

Also, my roommates were in the next room. We have a third roommate. He was in the next room right next to Ben's bedroom. And he was there with his girlfriend that night. They didn't hear anything. None of what she is saying is true. I didn't sexually assault her, rape her, any of that.

\*      \*      \*

BY THE COURT: So is it your testimony, sir, that there was no activity other than her kissing you in the hallway?

A. No. There was definitely sexual activity between two adults.

Q. Okay.

A. But it was consensual. I had the "yes" from her. I asked multiple times if she was okay with doing this and she agreed.

The trial court entered a one-year order of protection after the hearing, finding as follows:

The court finds and has specifically set out that on November 27th, 2021, Petitioner, Respondent, and Petitioner's boyfriend went out for drinks. Petitioner was "highly intoxicated" and there was sexual activity between Petitioner and Respondent to which Petitioner could not consent, and Respondent testified that he knew she was intoxicated and that it was not right to engage in sexual activity as Petitioner "was enticing" him to do.

3

Once sexual penetration occurred, Petitioner told Respondent to stop and he did not and resumed having sex with Petitioner.

Respondent timely filed a notice of appeal.

## II. ISSUES PRESENTED

Respondent raises the following issues:

1. Whether the trial court erred in considering irrelevant and/or inadmissible evidence in granting the order of protection to Petitioner.

2. Whether the decision of the trial court was against the weight of the evidence.

## III. STANDARD OF REVIEW

As stated by our Supreme Court,

> In a non-jury case such as this one, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review the trial court's resolution of questions of law de novo, with no presumption of correctness.

*Kelly v. Kelly*, 445 S.W.3d 685, 691-92 (Tenn. 2014). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). This is "[b]ecause the trial court is in the best position to judge the parties' credibility during live testimony at trial." *Larsen-Ball v. Ball*, No. E2020-00297-COA-R3-CV, 2021 WL 3854802, at *12 (Tenn. Ct. App. Aug. 30, 2021).

With respect to issues regarding the admission or exclusion of evidence, appellate courts review the trial court's determinations under an abuse of discretion standard. *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 273 (Tenn. 2005); *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). As we have previously explained:

> Under this standard, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). So, "we are not permitted to substitute our judgment for that of the trial court." *Id.* An appellate court

"will set aside a discretionary decision only when the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). We review a trial court's discretionary decision to determine: "(1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives." *Id.*

*Jackson v. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *2 (Tenn. Ct. App. Aug. 12, 2011).

## IV. ANALYSIS

Tennessee Code Annotated section 36-3-602(a) states in pertinent part that "[a]ny . . . sexual assault victim who has been subjected to, threatened with, or placed in fear of, . . . sexual assault . . . may seek relief under this part by filing a sworn petition" seeking an order of protection. Our statutory scheme further provides as follows:

(a) Upon the filing of a petition under this part, the courts may immediately, for good cause shown, issue an ex parte order of protection. An immediate and present danger of abuse to the petitioner shall constitute good cause for purposes of this section.

(b) Within fifteen (15) days of service of such order on the respondent under this part, a hearing must be held, at which time the court shall either dissolve any ex parte order that has been issued, or shall, if the petitioner has proved the allegation of domestic abuse, stalking, sexual exploitation of a minor, sexual assault, or a human trafficking offense by a preponderance of the evidence, extend the order of protection for a definite period of time, not to exceed one (1) year[.]

Tenn. Code Ann. § 36-5-605. "Sexual assault victim" is defined at Tenn. Code Ann. § 36-5-601 as "any person, regardless of the relationship with the perpetrator, who has been subjected to, threatened with, or placed in fear of any form of rape, as defined in § 39-13-502, § 39-13-503, § 39-13-506 or § 39-13-522, or sexual battery, as defined in § 39-13-504, § 39-13-505, or § 39-13-527[.]" The crime of rape is defined as "unlawful sexual penetration of a victim by the defendant . . . accompanied by any of the following circumstances: . . . (2) The sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent." Tenn. Code Ann. § 39-13-503(a).

In this case, Petitioner argues that the trial court erred by considering a photograph on Petitioner's cell phone that she alleged to show bruises on her legs resulting from the sexual assaults. The entire discussion at trial regarding the photograph is as follows:

[Petitioner]: [T]he next day I had bruises on my legs, which I have a picture of the bruises. (Petitioner places a cell phone on the projector and a photograph is reviewed.)

*　　*　　*

THE COURT: All right. Ma'am, you need to lay a foundation and authenticate this picture, please.

[Petitioner]: I'm sorry. What was –
THE COURT: Ma'am, you need to lay a foundation and authenticate this picture, please.

[Petitioner]: I don't know –

THE COURT: There are – you know things about this picture, ma'am. You know them because for various reasons, you know them. You have to lay a foundation and authenticate them so I know why you say this photo is what you say it is.

[Petitioner]: It was the day after. I took it, and it is on my leg right here and you can see it is finger prints, like hand, from his hand.

THE COURT: And how do I know that is the day after, ma'am?

[Petitioner]: It should – it's on here, the day that I took it, November the 29th.

THE COURT: Okay. And again, ma'am, you have testified twice that he sexually assaulted you. That word has a specific meaning with required elements –

[Petitioner]: Okay.

THE COURT: – and without proof of each and every element, I cannot decide in your favor. And I hate to request and point that out. But you are asking the Court for relief and it is necessary for the requisite proof to be placed into evidence and established in order for me to rule in your favor.

6

Respondent did not make any objection regarding the photograph. He now argues on appeal that the picture was not properly authenticated nor admitted into evidence, so it "should not have been considered by the trial court in making its decision."

The trial court, faced with the challenging situation of dealing with two pro se opponent parties, properly explained that the photograph would have to be authenticated in order to be considered by the court. Contrary to Respondent's argument on appeal, there is no indication that the trial court placed any significant weight on the photograph in making its decision. The trial court, in making comments during the course of the hearing, did refer to the fact that the crime of aggravated rape requires a showing that "the defendant cause[d] bodily injury to the victim." Tenn. Code Ann. § 39-13-502(a)(2). But ultimately, in its written order, the trial court did not find that Respondent caused Petitioner bodily injury, nor did the court make any reference to the photograph. Such a finding was not required in order to establish the elements of sexual assault or rape, which in turn justifies the issuance of a protective order.

Respondent also argues that the trial court erred in allowing the testimony of Petitioner's boyfriend Ben Smith. Mr. Smith said that Respondent had "a track record of being dishonest and using that dishonesty toward his advantage." His testimony was quite brief, amounting to less than a page and a half in the transcript. Mr. Smith recounted several incidents that he said reflected negatively on Respondent's character. These included an allegation that Respondent stole nude photographs from a friend's phone and was once very pushy with another friend and "wanted to give her a massage and instructed her to take her clothes off."

Respondent now argues that Mr. Smith's testimony should have been excluded under Tenn. R. Evid. 404(b), which applies to "[e]vidence of other crimes, wrongs, or acts." Respondent made no such objection at the hearing, however. In fairness to Respondent, we recognize that at an earlier point in the hearing, he did argue that alleged evidence of prior "shady and nasty things" he had done "six years ago" was not relevant. But he did not ever invoke Rule 404(b), nor did he lodge any objection during or after Mr. Smith's testimony. In *Hessmer v. Hessmer*, 138 S.W.3d 901, 904 (Tenn. Ct. App. 2003), this Court, observing that "[p]ro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries," stated:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997). The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). However, the courts must also be mindful of the boundary

between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n. 4 (Tenn. Ct. App. 1995).

*Id.* at 903. An appellate court will generally not fault a trial court for not interposing and applying a rule that was never timely cited or invoked by the party later asserting error. *See, e.g.*, *State v. Thompson*, No. M2009-01714-CCA-R3-CD, 2011 WL 4954057, at *18 (Tenn. Crim. App. Oct. 19, 2011) ("Our supreme court has said that 'Failure to raise a contemporaneous objection to . . . testimony as being a prior bad act effectively waives this issue.'") (quoting *State v. Thacker*, 164 S.W.3d 208, 239 (Tenn. 2005)).

The written findings in the trial court's order of protection indicate that it correctly focused on the determinative facts of this case, namely that the sexual penetration by Respondent was done without Petitioner's consent, and that he knew it or had reason to know it at the time. The findings were necessarily driven by the trial court's observation of the demeanor of the witnesses and its respective assessments of credibility. *See generally L.A.S. v. C.W.H.*, No. E2021-00504-COA-R3-JV, 2022 WL 17480100 at *4 (Tenn. Ct. App. Dec. 7, 2022) (recognizing that an issue resting "upon a he said/she said dichotomy . . . hinges upon an assessment of witness credibility") (quoting *Higdon v. Higdon*, No. M2019-02281-COA-R3-CV, 2020 WL 6336151, at *7 (Tenn. Ct. App. Oct. 29, 2020)). "We will not second-guess the trial court's credibility determinations absent clear and convincing evidence to the contrary." *Wininger v. Wininger*, No. E2021-01296-COA-R3-CV, 2022 WL 4231947, at *6 (Tenn. Ct. App. Sept. 14, 2022) (citing *Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011)). Here, the evidence does not preponderate against the trial court's findings, and the court did not misapply the controlling legal principles.

## V. CONCLUSION

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Icker Derek Barile, for which execution may enter if necessary.

_____
KRISTI M. DAVIS, JUDGE

8